## Appeal of WEST POINT INVESTMENT CO.   Docket No. 300.

1. The corporation taxpayer transferred certain assets to a new corporation organized to receive them and received in exchange therefor a percentage of the capital stock issued by the new corporation and the entire amount of cash received by it from the sale of the balance of the issued stock. *Held:* that under the Revenue Act of 1918 the only taxable profit realized by the taxpayer was that from the sale of such portion of the assets as is represented by the ratio existing between the number of shares of stock sold to the public and the entire number of shares issued.

2. The taxpayer is entitled to deduct from gross income for the fiscal year ended April 30, 1918, a bonus paid to its officers and charged as an expense for such fiscal year.

Submitted December 4, 1924; decided January 29, 1925.

*Ernest Clayton, C. P. A.*, for the taxpayer.

*Robert A. Littleton, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

The taxpayer appeals from a proposed additional assessment of income and profits taxes for the fiscal year ended April 30, 1918, of $12,976.18. From the documentary evidence submitted the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer is a Georgia corporation with its principal office at West Point, Ga. A deficiency letter was mailed to the taxpayer on August 5, 1924, showing a deficiency in income and profits taxes for the fiscal year ended April 30, 1918, of $12,976.18.

2. At a meeting of the taxpayer's board of directors held on February 5, 1918, the officers of the corporation were authorized to purchase the business of Pike Bros. Lumber Co., La Grange, Ga. It was the intent of the taxpayer, as evidenced by its minutes, to take over the properties for the specific purpose of turning them into a corporation to be organized immediately after title thereto had been acquired.

3. Under date of February 12, 1918, six individuals, some of whom were officers of the taxpayer, petitioned the Superior Court of Troupe County, Ga., for a charter for the "La Grange Lumber & Supply Co." The charter was granted under date of March 18, 1918, with an authorized capital stock of $100,000 (par value $100 per share). The taxpayer subscribed for 600 shares. The public was invited to subscribe for the balance, 400 shares. Of these 400 shares, only 344 shares were subscribed for. The incorporators subscribed for 105 shares for themselves and for 120 additional shares for their immediate families and relatives, and employees and others subscribed for 119 shares. The 344 shares mentioned were paid for in cash at par. Subsequent to the close of the fiscal year the taxpayer bought 30 of the outstanding shares at $100 per share.

The assets of the Pike Bros. Lumber Co. were acquired in the name of Horace Lanier. On February 21, 1918, a bill of sale was made to him by the company in consideration of $22,000 conveying title to certain personal property including engines, boilers, lathes, saws, livestock, wagons, harness, auto truck, furniture and fixtures, stock of merchandise, etc. The purchase money was advanced by the taxpayer on February 23, 1918. On the same date the vendor corporation deeded to Horace Lanier certain real properties in fee simple in consideration of $32,400. The purchase money was advanced by the taxpayer on February 22 or February 23, 1918.

On March 22, 1918, Horace Lanier assigned the bill of sale to the personalty and conveyed the realty to which he had taken legal title to the La Grange Lumber & Supply Co.

For the assets acquired from the Pike Bros. Lumber Co. the taxpayer paid $54,723. This amount included certain charges for conveyancing. The taxpayer expended upon the buildings, machinery, etc., while they were being held by Horace Lanier, $20,090.22. The taxpayer's investment in the assets acquired was, therefore, $74,813.22. These assets were turned over to the La Grange Lumber & Supply Co. for $34,400 cash and 600 shares of capital stock.

The Commissioner has held that the fair market value of the 600 shares of stock received by the taxpayer was $60,000 and that in reality it received $94,400 for assets which cost it $74,813.22, thereby realizing a profit of $19,586.78 from the transaction.

4. Salaries and bonuses were paid to the taxpayer's officers for the fiscal year ended April 30, 1918, as follows:

| Salaries. | | Bonus. | |
|---|---|---|---|
| E. F. Lanier, president and treasurer | $5,000 | E. F. Lanier, president and treasurer | $1,000 |
| Horace Lanier, vice president and secretary | 7,500 | Horace Lanier, vice president | 2,500 |
| J. C. Lanier, general manager | 6,000 | J. C. Lanier, general manager | 1,000 |
| Total | 18,500 | Total | $4,500 |

The $4,500 bonuses were not voted until May 6, 1918. Although the bonuses of $4,500 were not voted until after the close of the taxpayer's fiscal year, they were the same in amount as were paid to the same officers for the preceding fiscal year ended April 30, 1917, and it was generally understood by the officers that bonuses would be paid for the fiscal year ended April 30, 1918. In accordance with such general understanding the officers were permitted to withdraw compensation from the taxpayer in excess of their regular salaries. The Commissioner has allowed the deduction of such part of the bonuses claimed as a deduction for the fiscal year ended April 30, 1918, as were withdrawn by the officers during the fiscal year. The amount of the withdrawals was $2,805.77, which withdrawals were allocated by the Commissioner as follows:

| | |
|---|---|
| E. F. Lanier | $1,000.00 |
| Horace Lanier | 1,583.56 |
| J. C. Lanier | 222.21 |
| Total | 2,805.77 |

The difference between this total and $4,500.00, or $1,694.23, was disallowed as a deduction by the Commissioner.

#### DECISION.

The deficiency should be computed in accordance with the following opinion. Final decision of the Board will be settled on consent or on seven days' notice in accordance with Rule 50.

#### OPINION.

SMITH: This appeal raises two questions: (1) whether the taxpayer received a taxable gain from the exchange by it of assets which cost it $74,813.22 for $34,400 cash and $60,000 par value of

the stock of the La Grange Lumber & Supply Co., and (2) whether it is entitled to deduct from gross income for the fiscal year ended April 30, 1918, $4,500 bonuses paid to three officers, which bonuses were voted at a meeting of the board of directors on May 6, 1918, but which had been drawn against by the officers during the fiscal year to the extent of $2,805.77.

1. The facts relating to the transfer of assets which cost the taxpayer $74,813.22 for cash and shares of stock of the La Grange Lumber & Supply Co. are fully set forth in the findings of fact. Upon this point the taxpayer contends, (a) that the transaction was not a closed and completed transaction and that consequently no profit was derived therefrom; (b) that if the transaction constituted an exchange of properties, the properties received in exchange were not essentially different from the properties disposed of and hence the exchange was in form only and not in substance; and (c) that the shares of stock received by the taxpayer did not have a market value, but only a speculative value; that only $74,813.22 was paid into the corporation against which 944 shares of stock were issued, giving an investment value of $79.25 per share.

Under the Revenue Act of 1918, a taxpayer is required to include in gross income " gains or profits and income derived from any source whatever." (See secs. 213 (a) and 233 (a).) Section 202 (b) provides in part:

(b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any; but when in connection with the reorganization, merger, or consolidation of a corporation a person receives in place of stock or securities owned by him new stock or securities of no greater aggregate par or face value, no gain or loss shall be deemed to occur from the exchange, and the new stock or securities received shall be treated as taking the place of the stock, securities, or property exchanged.

With respect to the first contention of the taxpayer the Board is of the opinion that the transaction was closed and completed during the fiscal year ended April 30, 1918. Prior to March 22, 1918, the taxpayer owned assets which it had but recently acquired at a cost of $74,813.22. It exchanged these assets for $34,400 cash and 600 shares out of a total of 944 shares outstanding of the capital stock of the La Grange Lumber & Supply Co. There was nothing further to be done by the taxpayer to complete the transaction. It had done all that it had intended to do at the time that it acquired the assets.

The Board is also of the opinion that the transaction constituted an exchange of properties. Prior to March 22, 1918, the taxpayer owned, through its nominee, certain assets. These assets were turned over to a newly organized corporation in exchange for cash and shares of stock. Prior to such transfer, the ownership of the assets was in the taxpayer through its nominee; after the transfer the ownership of the assets was in the La Grange Lumber & Supply Co. In place of the assets the taxpayer had cash and shares of stock in the newly organized corporation. We think that these shares of stock were essentially different in character from the properties turned in for the shares of stock. The exchange was an exchange in substance and not merely in form.

The third point made by the taxpayer is that the shares of stock received by it did not have a market value, but only a speculative value. This is denied by the Commissioner upon the ground that 344 shares were subscribed for and paid for in cash at par, which fact, it is contended, proves that the fair market value of each and every share issued was $100 and that the 600 shares received by the taxpayer had a fair market value of $60,000.

This is not a case of a "reorganization, merger, or consolidation of a corporation." The legal existence and capitalization of the taxpayer were in no wise affected by the transaction. The only question for determination is whether the cash and shares of stock of the new corporation received by the taxpayer in exchange had a value in excess of the cost to the taxpayer of the assets turned in therefor.

From the evidence presented in the instant appeal the Board is not convinced that the sale of 344 shares of the capital stock of the La Grange Lumber & Supply Co. at $100 per share marks the fair market value of the remaining 600 shares at $100 per share. If this were so, it would have to be held that the taxpayer realized, as claimed by the Commissioner, a profit of $19,586.78 from the transaction. But only a portion of the number of shares which the corporation wished to sell at $100 per share was sold. The total number of shares offered to the public at that price was 400, and of these only 344 shares were taken. The market was exhausted with the sale of 344 shares.

We find that the taxpayer had a 100 per cent interest in assets which cost it $74,813.22; that it disposed of 600/944 of its interest for 600 shares of stock in a newly organized corporation, the fair market value of which is not ascertainable; that it disposed of 344/944 interest in those assets for $34,400 cash. The cost to the taxpayer of the interest thus disposed of for cash was at the rate of $79.25 for each 1/944 interest, or a total of $27,262. The profit realized upon the transaction was, therefore, $7,138. This amount represented taxable income to the taxpayer for the fiscal year ended April 30, 1918. The taxpayer should account for any gain or loss upon the sale or disposition of its 600 shares in the year in which such sale or disposition takes place on the basis that each share cost it $79.25.

2. The facts with respect to the second point raised are fully set forth in the findings of fact. The officers of the corporation had been paid a bonus for the fiscal year ended April 30, 1917, and there was an understanding among them that a like bonus would be paid for the succeeding fiscal year. Indeed, so certain were the officers of receiving such bonus that they withdrew funds from the corporation in anticipation of such bonus. The bonus was actually voted on May 6, 1918, and charged as an expense of the corporation for the fiscal year ended April 30, 1918.

We are of the opinion that the payment of the bonus in the amount of $4,500 constituted an ordinary and necessary expense of the taxpayer for the fiscal year ended April 30, 1918. The action of the Commissioner in disallowing the deduction of $1,694.23 of the $4,500 deduction claimed is disapproved.

On consideration by the Board, TRAMMELL dissents.